UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------- x

JACQUELINE MORRIS,

                                                                Plaintiff,

-against-

CITY OF NEW YORK, et. al.,

                                                                Defendants.

**DEFENDANTS' REPLY MOTION FOR SUMMARY JUDGMENT**

**15-CV-05872(JBW)(RER)**

------------------------------------------------------------------------- x

**PRELIMINARY STATEMENT**

      Plaintiff Jacqueline Morris brings this action against The City of New York, and NYPD Officers Patrick Gordon and Kevin Collins, in connection with her April 13, 2014 arrest. Plaintiff's opposition to defendants' summary judgment voluntarily dismissed a number of claims against the defendants: malicious prosecution, malicious abuse of process, and deliberate indifference to medical needs. The remaining claims against PO Collins appear to be a claim for denial of the right to a fair trial (although there is no evidence that PO Collins ever forwarded any information to the District Attorney) and failure to intervene. The remaining claims against PO Gordon are false arrest, excessive force, and denial of the right to a fair trial.  While plaintiff's opposition attempts to create issues of fact by raising immaterial details and using inflammatory language, it is clear that based on plaintiff's undisputed testimony that all of the claims against both defendants must be dismissed.

      As plaintiff alleges, the incident that culminated in plaintiff's April 13, 2014 arrest resulted from a long-term, ongoing dispute over the probate of a five-story brownstone on South Portland Street in Fort Greene, Brooklyn. At the time of the incident, it is undisputed that

plaintiff, Jacqueline Morris, and her sister, Sonia Kornegay (who also uses the name "Morris" but will be referred to as "Kornegay" for clarity), both lived in that residence, along with a number of other members of their family. Morris and Kornegay's mother was the title-holder of the building when she died intestate in 2006. The building has been the subject of a probate proceeding ever since.

As plaintiff admits in her opposition papers, immediately prior to the incident in which she was arrested, Kornegay was hospitalized after having had a stroke. Plaintiff also admits that she changed the lock on the door to a bedroom on the third floor of the building immediately prior to the incident where Kornegay had stayed at some point and that the changing of the locks caused Kornegay to become upset. While plaintiff and Kornegay dispute whether Kornegay had been staying in that bedroom in the time just before the incident, both plaintiff and Kornegay state that a substantial number of Kornegay's possessions were in that bedroom. Plaintiff also acknowledges that, on the morning of the incident, a number of individuals who were friends with plaintiff and had spent the prior night at the residence were removing Kornegay's property from the room. As plaintiff acknowledges, Kornegay's son called the police because Kornegay was upset about the situation with the changing of the locks and moving her property.

## ARGUMENT

**I.   PLAINTIFF'S CLAIM FOR FALSE ARREST FAILS AS A MATTER OF LAW BECAUSE PROBABLE CAUSE EXISTED TO ARREST PLAINTIFF**

Plaintiff argues that there was no probable cause for plaintiff's arrest because she did not kick PO Gordon, and no probable cause existed for the charges of unlawful eviction or petit larceny. She argues that (1) none of the information supporting the charges of unlawful eviction and petit larceny was known to the defendants at the time of plaintiff's arrest; and (2) that

information does not support the charges of unlawful eviction or petit larceny. Neither of these arguments is supportable.

"Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). However, courts have repeatedly held that "a claim for false arrest turns only on whether probable cause existed to arrest a defendant, and that it is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest." *Jaegly v. Couch*, 439 F.3d 149, 154 (2d Cir. 2006) (citing *Devenpeck*, 543 U.S. at 153-54). Thus, the fact that PO Gordon only charged plaintiff with crimes in connection with the allegation that plaintiff kicked him is irrelevant to the inquiry as to whether or not there was probable cause to arrest plaintiff for other crimes. The only fact that matters is whether the defendants were aware of information that supported plaintiff's arrest for other crimes.

Plaintiff argues that PO Gordon only arrested plaintiff for kicking him and for no other crimes. Plaintiff relies on PO Gordon's testimony to support the allegation that "he knew only that Kornegay had complained that Morris was renting rooms and that Kornegay did not feel safe with the number of people in the home. Nothing Kornegay told Gordon constituted a crime and Gordon did not believe that there was any basis to arrest plaintiff until she supposedly kicked him." (Pl. Opp. at p. 5). However, this interpretation of the record is only possible if one ignores the testimony of both Kornegay and plaintiff herself.

While PO Gordon might not now remember the precise subject of everything that Kornegay told him, Kornegay testified at some length that she told PO Gordon about plaintiff changing the locks in the room and moving her possessions. (Kornegay Dep. pp. 40-42).

Kornegay testified: "I just said what she [plaintiff] did to my things that she locked the door and things." (Kornegay Dep. p. 41:20-22). She further testified: "I told them [the officers] they [plaintiff's friends] took my belongings, yeah." (Kornegay Dep. p. 46:13-14). Plaintiff thus cannot fairly dispute that Kornegay told PO Gordon that she had changed the lock on the door and moved Kornegay's belongings. Moreover, at her own deposition, she testified that she told PO Gordon that, "…she is arguing over that room but she has lived in the garden apartment for over a year…I said 'Ask them where she has been sleeping for over a year.'" (Morris Dep. p. 67 5-9). Plaintiff thus cannot now, based on PO Gordon's lack of recollection of the specifics of what he was told nearly three years prior, argue that PO Gordon never received information that plaintiff and Kornegay, by their own testimony, gave to him. Plaintiff's argument that PO Gordon never received the information upon which defendants' argument relies should thus be rejected.

In support of this contention, plaintiff relies heavily on *Shamir v. City of New York*, 804 F.3d 553, 556 (2d Cir. 2015). However, plaintiff ignores many of the details of the underlying facts of that case. That case concerned an arrest during Occupy Wall Street of an individual who testified at his statutory hearing pursuant to GML 50-h that he intended to sleep in the park in a sleeping bag as a protest. Because of the procedural posture of the case, which began as a Rule 12(b)(6) motion, but was converted to a motion for summary judgment due to reliance on plaintiff's GML 50-h testimony, there was no testimony from any of the officers in the case.

Thus, "the District Court did not have testimony from any of the officers confirming that at least one of them saw Shamir sitting on his sleeping bag and then had reason to believe that he intended to sleep in an area covered by park regulations." These facts stand in marked contrast to the facts of the present case, in which plaintiff, PO Gordon, and Kornegay all agree that PO

- 4 -

Gordon had a conversation with Kornegay. While PO Gordon does not now remember the details of the conversation, the testimony of Kornegay and plaintiff can only lead to the conclusion that Kornegay informed PO Gordon of the facts concerning the dispute over the room and Kornegay's property.

New York Penal Law §155.05 provides, in pertinent part, that: "A person steals property and commits larceny when, with intent to deprive another of property or to appropriate the same to himself or to a third person, he wrongfully takes, obtains or withholds such property from an owner thereof." *See also* N.Y. Penal Law § 155.25 (defining "petit larceny"); *Gurevich v. City of New York*, 06 Civ. 1646 (GEL), 2008 U.S. Dist. LEXIS 1800 (S.D.N.Y. Jan. 10, 2008) (holding that probable cause supported plaintiff's arrest for petit larceny when complainant informed police that he used to live with plaintiff and that she would not let him retrieve certain belongings that he had left in her apartment).

Plaintiff's only argument in opposition to defendants' argument that there was probable cause for petit larceny is that at the time of the arrest, Kornegay had not told Gordon that anyone was taking her property or withholding it from her, or that they were doing it at the direction of plaintiff or for her benefit. (Pl. Opp. p. 7). However, as Kornegay testified that she showed him that "all my stuff was gone." (Kornegay Dep. p. 90:8). Given what Kornegay told plaintiff about the people moving Kornegay's possessions out of the room (which plaintiff also admitted at her deposition), indisputably not at Kornegay's direction, but rather at plaintiff's direction, to a location that was not the place that plaintiff alleges that Kornegay now lives, it was reasonable for PO Gordon to believe that the crime of petit larceny had been committed.

New York State Real Property and Procedures Law § 711 provides that a tenant shall include an occupant of one or more rooms in a house who has been in possession for thirty

consecutive days or longer shall not be removed from possession except in a special proceeding. *Paulino v. Wright* 210 AD2d 171, 620 N.Y.S.2d 363); *Mitchell v City of New York* 154 Misc 2d 222, at 223, 584 N.Y.S.2d 277; *Truglio v. VNO 11 E. 68th St. LLC*, 2012 NY Slip Op 50908(U), 953 N.Y.S.2d 554 (Civ. Ct.). Additionally, in pertinent part, New York City Administrative Code § 26-521(a) provides that it shall be unlawful for any person to evict or attempt to evict an occupant of a dwelling unit who has lawfully occupied the dwelling unit for thirty consecutive days or longer by the use of force or by engaging or threatening to engage in conduct that would interfere with the occupant's peaceful enjoyment of the premises.

The New York City Administrative Code § 26-522(a)(1) further provides that "dwelling unit" means a dwelling unit as such term is defined in subdivision thirteen of section 27-2004 of the housing maintenance code. Section 27-2004(a)(13) of the housing maintenance code provides that a "Dwelling unit shall mean any residential accommodation in a multiple dwelling or private dwelling." *NYC Administrative Code* §27-2004(a)(13). These provisions of the Administrative Code are intended to expand the available remedies in the case of unlawful eviction. *Truglio v. VNO 11 E. 68th St. LLC*, 2012 NY Slip Op 50908(U), 953 N.Y.S.2d 554 (Civ. Ct.). Any person who intentionally violates or assists in the violation of any of the provisions of this chapter shall be guilty of a class A misdemeanor. *NYC Administrative Code* §26-523.

Once again, in opposition to defendants' motion, plaintiff only raises her own contention that Kornegay had been living in the downstairs apartment for over a year, and thus there was no probable cause to arrest her for unlawful eviction. However, Kornegay clearly testified that she told PO Gordon that the bedroom in which he encountered her was her room and that plaintiff had changed the lock on the door without giving her a new key. While there is no testimony

concerning whether or not Kornegay provided PO Gordon with any proof of her address, in light of the undisputed testimony that some of Kornegay's possessions were in the disputed bedroom, it was reasonable for him to conclude that Kornegay had a right to live in that location. Police have probable cause to arrest if they receive "'information from some person, normally the putative victim or eyewitness' . . . unless the circumstances raise doubt as to the person's veracity." *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006).

Even in the absence of probable cause, a police officer is entitled to qualified immunity if the probable cause determination was objectively reasonable— that is, whether there was "arguable" probable cause to arrest. *Jenkins v. City of New York*, 478 F.3d 76, 87 (2d Cir. 2007). The doctrine of qualified immunity provides a complete defense where "either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991); accord *Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 416 (2d Cir. 1999). Its purpose is to give government officials room to make reasonable but mistaken judgments and to protect all but the plainly incompetent or those who knowingly violate the law. *City & Cty. of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1774, 191 L. Ed. 2d 856 (2015). As described above there was probable cause to arrest plaintiff for either of the aforementioned crimes. Moreover, reasonable officers could disagree about the existence of probable cause to arrest plaintiff on the basis of the information that PO Gordon was given at the time of the incident. Therefore, PO Gordon is entitled to dismissal of plaintiff's claim for false arrest under the doctrine of qualified immunity.

## II.     PLAINTIFF'S CLAIM FOR EXCESSIVE FORCE FAILS BECAUSE THE FORCE USED WAS DE MINIMIS

Plaintiff argues that her excessive force claim should not be dismissed because the force used was clearly unreasonable in light of the circumstances, so the fact that she sustained, at most, *de minimis* injuries is not relevant.  This is simply not the case, because, even if PO Gordon used the force that plaintiff alleges was used, that amount of force would still be reasonable to effect plaintiff's arrest. Plaintiff alleges three types of uses of force: (1) that PO Gordon pushed her with one hand into an alcove in her bedroom; (2) that he "dragged" her down the stairs "like a rag doll"; and (3) that the handcuffs he applied were too tight. Furthermore, plaintiff's opposition spends a great deal of time arguing that plaintiff is extremely infirm and injury prone, so the fact that PO Gordon's allegedly unreasonable force did not cause any lasting injury speaks doubly to the fact that any force used was reasonable.

First, courts have repeatedly found that handcuffing an individual under arrest is reasonable, and, to the extent that there are no lasting injuries, they should be considered *de minimis*. *See, e.g., Hamlett v. Town of Greenburgh*, 2007 U.S. Dist. LEXIS 3201, 2007 WL 119291 (S.D.N.Y. Jan. 17, 2007); *Vogeler v. Colbath,* 04 CV 6071, 2005 U.S. Dist. LEXIS 44658, 2005 WL 2482549 (S.D.N.Y. Oct. 6, 2005). Plaintiff has not alleged any long-lasting effects from the allegedly tight handcuffs, and thus, that claim should be dismissed.

Second, while plaintiff's opposition states that "Gordon gratuitously struck plaintiff in her recently fractured ribs" and that he "shove[d] a disabled woman in her fractured ribs," her testimony regarding the push she received from PO Gordon is much less dramatic. She stated that he pushed her with one hand into the alcove. (Morris pp. 67-68). The fact that her ribs were fractured should not be taken into consideration in light of the fact that there is no testimony to suggest that PO Gordon knew that plaintiff's ribs were fractured.

Finally, plaintiff's opposition alleges that she was "dragged" down the stairs "like a rag doll" by PO Gordon. However, her own deposition testimony does not support that characterization. She testified that she remained upright for the entire trip down the stairs and that her feet touched the stairs as she was going down the stairs. (Morris p. 78). This description does not support the allegation that she was subject to excessive force in her trip down the stairs—rather PO Gordon accompanied plaintiff as she walked down the stairs on her own two feet.

### III. PLAINTIFF'S CLAIM FOR DENIAL OF THE RIGHT TO A FAIR TRIAL MUST FAIL BECAUSE THE ALLEGEDLY FABRICATED EVIDENCE DID NOT CAUSE ANY DEPRIVATION OF LIBERTY

When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial. *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997); see also *Morse v. Fusto*, 804 F.3d 538, 548 (2d Cir. 2015). The courts recognize a constitutional right "not to be deprived of liberty as a result of the fabrication of evidence" by an officer. *Zahrey v. Coffey*, 221 F.3d 342, 349 (2d Cir. 2000). In order to prove the claim, plaintiff must show that defendants fabricated evidence that was material to his conviction of some crime. *Ricciuti*, 124 F.3d at 130 (fabrication must be "likely to influence a jury's decision"). Plaintiff, in other words, "must establish a causal connection between the fabricated evidence and a deprivation of liberty." *Lopez v. City of New York*, 105 F. Supp. 3d 242, 247 (E.D.N.Y. 2014) (citing *Zahrey*, supra). Plaintiff cannot show that the denial of her liberty was the result of any purported fabrications, because probable cause existed for charges entirely separate from the one related to the alleged fabrication, and the denial of her liberty was the result of her lawful arrest. Moreover, the statements made by Kornegay supported probable cause for the other potential charges that

plaintiff could have been arrested and prosecuted that were entirely separate from those related to the allegation that plaintiff kicked PO Gordon. For this reason her fair trial claim must be dismissed. *See Lopez*, 105 F.3d at 247; *Zahrey,* 242 F.3d at 348.

## IV.     **BECAUSE PLAINTIFF HAS FAILED TO ALLEGE AN UNDERLYING CONSTITUTIONAL VIOLATION, HER CLAIM FOR FAILURE TO INTERVENE MUST ALSO FAIL**

Plaintiff has failed to allege constitutional violations with respect to any of her claims against PO Gordon. Thus, there can be no claim for failure to intervene against PO Collins. *See*, *e.g., Curley v. Village of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001). Moreover, officers cannot be held liable for failure to intervene in incidents that happen in a "matter of seconds." *Henry v. Dinelle*, No. 9:10-CV-0456 (GTS/DEP), 2011 U.S. Dist. LEXIS 136583, at *13 (N.D.N.Y. Nov. 29, 2011). There must have been enough time for another officer to intervene. *O'Neill v. Krzeminski*, 839 F.2d 9, 11-12 (2d Cir. 1988) (rejecting plaintiff's claims of failure to intervene as a matter of law where the alleged excessive force consisted of three rapid blows because the officer "had no realistic opportunity to prevent them"). Because plaintiff alleges that the excessive force used on her was over in a matter of seconds, there PO Collins had no realistic opportunity to intervene.

- 11 -

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment should be granted and the First Amendment Complaint should be dismissed in its entirety, with prejudice.

Dated:   New York, New York
        July 7, 2017

        Respectfully submitted,

        ZACHARY W. CARTER
        Corporation Counsel of the City of New York
        *Attorney for Defendants City, Gordon, and Collins*
        100 Church Street
        New York, New York 10007
        (212) 356-2572

By:       /s/
        Angharad K. Wilson, Esq.